Joel E. Tasca, Esq.
Nevada Bar No. 14124
Madeleine Coles
Nevada Bar No. 16216
BALLARD SPAHR LLP
1980 Festival Plaza Drive, Suite 900
Las Vegas, Nevada 89135
Telephone:  702.471.7000
Facsimile:  702.471.7070
tasca@ballardspahr.com
colesm@ballardspahr.com

*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JAMES DUFFY, a.k.a. JIM DUFFY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, NATIONAL ASSOCIATION<br><br>Defendants. | CASE NO.  2:22-cv-01988-APG-BNW<br><br>**[PROPOSED] PROTECTIVE ORDER** |

Defendant JPMorgan Chase Bank, N.A. ("Defendant") filed a motion to dismiss Plaintiff James Duffy's ("Plaintiff") First Amended Complaint on February 22, 2023.  Concurrently therewith, Defendant filed a motion to stay discovery pending resolution of the motion to dismiss, which Plaintiff opposed.  On April 6, 2023, the Court heard oral argument on the motion to stay.  The Court denied the motion but indicated that it would enter a protective order limiting discovery to certain requests as articulated and agreed to by Plaintiff during the hearing.

The Court hereby enters this Protective Order pursuant to the Court's authority under FRCP 26(c).

**IT IS HEREBY ORDERED:**

Until this Court decides Defendant's motion to dismiss, the Parties shall not engage in discovery in any form except as follows:

BALLARD SPAHR LLP
1980 Festival Plaza Drive, Suite 900
Las Vegas, Nevada  89135
702.471.7000 FAX 702.471.7070

(1)     Plaintiff may request that Defendant produce opening statements related to the Markowitz Attorney Trust Account;

(2)     Plaintiff may request that Defendant produce reports made to the State Bar of Nevada and/or the State Bar of New York related to the Markowitz Attorney Trust Account;

(3)     Plaintiff may request that Defendant produce documents evidencing complaints from any person who deposited funds into the Markowitz Attorney Trust Account;

(4)     Plaintiff may request that Defendant produce its internal policies and procedures in effect in February 2009 (the month the Markowitz Attorney Trust Account was opened) relating to bar verification of attorneys seeking to open an attorney trust account and the handling of attorneys barred outside of the state in which they seek to open an attorney trust account.

Defendant shall conduct a reasonable records search and produce documents responsive to each of the above described categories to the extent that any such documents exist.  Defendant shall also reserve the right to make any good faith objections to Plaintiff's requests.

Dated:  April ___, 2023.

IT IS SO ORDERED:

_____
UNITED STATES MAGISTRATE JUDGE

DATED: _____April 25, 2023_____

Submitted by:

BALLARD SPAHR LLP

By: _/s/ Madeleine Coles___
Madeleine Coles, Esq.
Nevada Bar No. 16216
Joel E. Tasca, Esq.
Nevada Bar No. 14124

BALLARD SPAHR LLP
1980 Festival Plaza Drive, Suite 900
Las Vegas, Nevada 89135
702.471.7000 FAX 702.471.7070

1980 Festival Plaza Drive, Suite 900
Las Vegas, Nevada 89135

*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

BALLARD SPAHR LLP
1980 Festival Plaza Drive, Suite 900
Las Vegas, Nevada 89135
702.471.7000 FAX 702.471.7070

# Exhibit 1

# Ballard Spahr
LLP

_____

One Summerlin
1980 Festival Plaza Drive, Suite 900
Las Vegas, NV 89135-2958
TEL 702.471.7000
FAX 702.471.7070
www.ballardspahr.com

Joel E. Tasca
Madeleine Coles
Tel: 702.868.7511
Fax: 702.471.7070
tasca@ballardspahr.com
colesm@ballardspahr.com

April 21, 2023

U.S. Magistrate Judge Brenda Weksler
U.S. District of Nevada
333 Las Vegas Blvd. South
Las Vegas, Nevada 89101

*Re:*   Duffy v. JPMorgan Chase Bank, N.A. – 2:22-cv-01988-APG-BNW

Dear Judge Weksler:

      Attached for your review please find a proposed order regarding discovery in this matter pursuant to your oral ruling during the hearing on Chase's motion to stay discovery held April 6, 2023.  The proposed order was submitted to counsel for Plaintiff James Duffy, and the Parties met and conferred in good faith, but were unable to agree on the substance of the order.  At the April 6 hearing, Plaintiff unambiguously agreed to limit all discovery in this case, pending this Court's ruling on Chase's motion to dismiss, to the specific discovery described during the hearing.  *See* Tr. Of Apr. 6, 2023 Hrg. at 14:2-9 (attached as Exhibit 2 hereto).  The only discovery discussed during the hearing was (1) the account's opening statements, (2) reporting on the account to the State Bar of New York and the State Bar of Nevada, (3) complaints received by Chase from other persons who had deposited funds into the account, and (4) policies and procedures for determining the bar status of an attorney opening an attorney trust account.  *Id.* at 8:15; 8:17-9:6; 10:5-9; 12:3-17.  However, in discussing the terms of a proposed order, Plaintiff demanded broad, vague discovery in excess of what had been agreed to during the hearing.  While there is no reason any discovery is needed immediately, Chase attempted to negotiate in good faith with Plaintiffs regarding the scope of discovery, but was unsuccessful.  Everything Plaintiff demands can be sought in the unlikely event his complaint survives Chase's motion to dismiss.  Chase's proposed order accurately reflects the agreement made by Plaintiffs with this Court regarding the discovery that will be sought before any ruling on the motion to dismiss.  Therefore, Chase respectfully submits that this Court should enter its proposed order.

      Very truly yours,

      BALLARD SPAHR LLP

      */s/ Joel E. Tasca*
      Joel E. Tasca
      Madeleine Coles

# Exhibit 2

TRANSCRIBED FROM DIGITAL RECORDING
2:22-cv-01988-APG-BNW - Thursday, April 6, 2023      1

1                  IN THE UNITED STATES DISTRICT COURT

2                      FOR THE DISTRICT OF NEVADA

3   JAMES DUFFY,                    )  CASE NO. 2:22-cv-01988-APG-BNW
                                    )
4              Plaintiff,           )  Las Vegas, Nevada
                                    )  Thursday, April 6, 2023
5         vs.                       )  Courtroom 3B
                                    )
6   JP MORGAN CHASE BANK, NATIONAL  )  Recording Method:  Liberty/CRD
    ASSOCIATION,                    )  1:03 p.m. - 1:25 p.m.
7                                   )  MOTION HEARING
               Defendant.          )
8   _____)  *C E R T I F I E D   C O P Y*

9

10

11                    TRANSCRIPT OF PROCEEDINGS

12            BEFORE THE HONORABLE BRENDA N. WEKSLER,
          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

13

14
    APPEARANCES:  (See next page)

15

16  Recorded by:  Jeff Miller

17  Transcribed by:     PAIGE M. CHRISTIAN, RPR, CRR, CCR #955
                        United States District Court
18                      333 Las Vegas Boulevard South
                        Las Vegas, Nevada  89101
19

20

21

22

23

24  Proceedings recorded by electronic sound recording.
    Transcript produced by mechanical stenography and computer.
25

1  **APPEARANCES:**

2

3  For Plaintiff James Duffy:

4        **JONATHAN D. BLUM, ESQ.**
         *WILEY PETERSEN*
5        1050 Indigo Drive
         Suite 200B
6        Las Vegas, NV 89145
         (702) 910-3329
7        E-mail: jblum@wileypetersenlaw.com

8     --*AND*--

9        **KENNETH J. CATANZARITE, ESQ.   (*Pro Hac Vice*)**
         *CATANZARITE LAW CORPORATION*
10       C/O Jennifer Weaver
         2331 W. Lincoln Avenue
11       Anaheim, CA 92801
         (714) 520-5544
12       E-mail: kcatanzarite@catanzarite.com

13
   For Defendant JP Morgan Chase Bank, National Association:
14
         **JOEL EDWARD TASCA, ESQ.**
15       *BALLARD SPAHR LLP*
         1980 Festival Plaza Drive
16       Suite 900
         Las Vegas, NV 89135
17       (702) 471-7000
         E-mail: tasca@ballardspahr.com
18
      --*AND*--
19
         **MADELEINE COLES, ESQ.**
20       *BALLARD SPAHR LLP*
         1980 Festival Plaza Drive
21       Suite 900
         Las Vegas, NV 89135
22       (702) 379-1157
         E-mail: colesm@ballardspahr.com
23

24

25

TRANSCRIBED FROM DIGITAL RECORDING
2:22-cv-01988-APG-BNW - Thursday, April 6, 2023    3

1          LAS VEGAS, NEVADA; THURSDAY, APRIL 6, 2023; 1:03 P.M.

2                              --o0o--

3                    P R O C E E D I N G S

4          **COURTROOM ADMINISTRATOR:**  Your Honor, good afternoon.

5   We are now calling James Duffy vs. JP Morgan Chase Bank, National

6   Association.  The case number is 2:22-CV-01988-APG-BNW.

7          Beginning with plaintiff's counsel, will all counsel

8   please state your names for the record.

9          **MR. BLUM:**  Good afternoon, Your Honor.  John Blum on

10  behalf of plaintiff.

11         **THE COURT:**  Good afternoon, Mr. Blum.

12         **MR. CATANZARITE:**  Good afternoon, Your Honor.  Ken

13  Catanzarite appearing also for the plaintiff pro hac vice.

14         **THE COURT:**  Good afternoon.

15         **MR. TASCA:**  Good afternoon, Your Honor.  Joel Tasca

16  for defendant JP Morgan Chase.

17         **THE COURT:**  Good afternoon, Mr. Tasca.

18         **MS. COLES:**  Good afternoon, Your Honor.  This is

19  Madeline Coles also for the defendant, JP Morgan Chase.

20         **THE COURT:**  All right.  So we are here on defendant's

21  motion to stay discovery.  This is at Document 22.  Plaintiff

22  opposed at Document 29.  And the defense replied at Document 31.

23         I set this case for argument, so let me go ahead and

24  hear, starting with the defendants.

25         Is it going to be Mr. Tasca or Ms. Coles?

TRANSCRIBED FROM DIGITAL RECORDING
2:22-cv-01988-APG-BNW - Thursday, April 6, 2023     4

1          **MR. TASCA:**  It will be me, Mr. Tasca.

2          **THE COURT:**  All right.  Go ahead, Mr. Tasca.

3          **MR. TASCA:**  Thank you, Your Honor.

4          So as cases go, as lawsuits go, our view of this case

5    is that the plaintiff has asserted some claims that really push

6    the balance of plausibility.  Basically, what we're trying to do

7    is (indiscernible) responsible for fraud committed by others just

8    because those others used an account at the bank to commit that

9    fraud.  So there's no allegation that -- that Chase was actively

10   involved in any of the alleged fraud that happened to Mr. Duffy.

11          All that Chase did was it held the bank account.  And

12   I have to give credit to the plaintiff's lawyers.  They've come

13   up with a very, sort of, creative way to get this -- that

14   Mr. Duffy believed that Mr. Markowitz, who is the accountholder

15   at the bank, was barred in Nevada, and it's that, that led him

16   astray and made him deposit money.  And, you know, it's a

17   creative theory, but it just doesn't withstand the legal

18   scrutiny.

19          And we do have pending motions to dismiss, which Your

20   Honor may or may not have gotten to look at.  But there are a

21   number of claims asserted, four claims, in the amended complaint

22   (indiscernible) second crack at trying to allege claims because

23   it is the amended complaint.

24          All the claims, in our view, can be dismissed without

25   discovery because we have legal defenses to those claims.  And

TRANSCRIBED FROM DIGITAL RECORDING
2:22-cv-01988-APG-BNW - Thursday, April 6, 2023     5

 1   it's a negligent misrepresentation claim.  That's the first one.

 2   That fails as a matter of law because there's no allegation that

 3   Chase ever made any misrepresentation or -- or even made a

 4   representation -- forget about misrepresentation -- to Mr. Duffy

 5   about anything.

 6           All Chase did was it had an account where the funds

 7   supposedly were deposited that -- that were allegedly then

 8   dissipated fraudulently.  Chase didn't do anything else.  No

 9   direct communication is alleged, and then (indiscernible) second

10   crack at trying to allege this.

11           So that -- that's the principal reason the negligent

12   misrepresentation claim fails.  There are other reasons.  Those

13   were in our papers.  But I don't want to belabor the discussion.

14           There was a second claim for fraudulent transfer, and

15   I understand that that claim has been abandoned by the plaintiffs

16   in -- in their opposition brief --

17           **THE COURT:**  So let me -- let me just interrupt you

18   here a moment.

19           **MR. TASCA:**  Sure.

20           **THE COURT:**  I think that -- I mean, it seems to me

21   that your -- your arguments are catered towards the preliminary

22   peek test, which are not particularly helpful to the moving

23   party, just because it requires that I can be convinced that the

24   motion to dismiss is going to be granted, right?

25           So it seems to me that you're better off arguing good

TRANSCRIBED FROM DIGITAL RECORDING
2:22-cv-01988-APG-BNW - Thursday, April 6, 2023      6

 1  cause as to why this case should be stayed.  So I'd rather hear

 2  your arguments on that.

 3           **MR. TASCA:**  Of course, Your Honor.  And we did

 4  recognize that -- that Your Honor does follow a different

 5  standard from the preliminary peek standard.  I think, you know,

 6  in drafting the papers, a lot of these things sort of merged

 7  together.  They move around.  So I think that, you know, looking

 8  at this from the -- from the good cause perspective, I think, you

 9  know, our -- our view of this is that the claims are very weak.

10  Again, it kind of merges back as the preliminary peek.

11           But, you know, if they were to go forward, they are

12  not (indiscernible) complicated claims.  There is a claim of

13  negligence against Chase.  There's no law that informs the

14  negligence standard because there is no duty here, as we argue in

15  our papers.  But even if the Court were to say, Well, but let's

16  see if they can establish a duty in discovery, we're going to

17  need to do expert discovery to explain what the duty is that a

18  bank has in this situation and what would be a breach of that

19  duty.  So there's going to be expert discovery necessary.

20           There is going to be complicated fact discovery.

21  There is an aiding and abetting breach of fiduciary duty claim

22  that's been asserted against Chase.  That claim necessarily

23  requires that the plaintiffs prove that Chase knowingly

24  participated -- or knowingly substantially assisted in the fraud.

25  And -- and, of course, knowledge is something that rarely can be

TRANSCRIBED FROM DIGITAL RECORDING

2:22-cv-01988-APG-BNW - Thursday, April 6, 2023     7

1  proven with direct evidence.  There would need to be indirect

2  evidence involving discovery of the relationships between Chase

3  and the two alleged fraudsters.  We already know that there's one

4  other incident involving Mr. Duffy and (indiscernible) two

5  alleged fraudsters.  So there's going to be discovery on those

6  things, as well.

7            We're also talking about an attorney trust account.

8  And so, if they're going to get discovery related to the account,

9  there are going to be what we believe are supporting issues of

10  attorney-client privilege that we're going to have to waive.

11           They are seeking -- we know already they are seeking

12  policy and procedure documents, which Chase are very sensitive

13  about.  So there's going to have to be either compromised or

14  motion practice on that subject because Chase will seek a

15  protective order.

16           So this is just, kind of, a sampling of the

17  types -- this is not a car accident.  This is a complicated novel

18  creative theory by the plaintiffs, and so, if they were to get

19  past the motion to dismiss, this case is going to be very

20  involved.  And our position is simply that that discovery should

21  not start now, and instead, it should await a determination as to

22  whether any of these claims are either plausible, which we

23  respectfully submit they are not, and this -- this case is either

24  going to be dismissed or, at a minimum, significantly

25  (indiscernible).

1          **THE COURT:**  Thank you so much.

2          All right.  For the plaintiff, is it going to be

3  Mr. Blum or Mr. Cat- -- say that one more time for me.

4          **MR. CATANZARITE:**  Catanzarite.

5          **THE COURT:**  Catanzarite.

6          Is it going to be you, sir?

7          **MR. CATANZARITE:**  (Indiscernible).

8          **THE COURT:**  All right.  Go ahead.

9          **MR. CATANZARITE:**  Yeah.  (Indiscernible).  If you

10  will.

11          In focusing on what we've asked for in terms of

12  discovery, I -- I, frankly, don't agree that it is -- that it

13  involves all of the, shall we say, argument -- nature of the

14  argument that my colleague has raised.  For example, the account

15  opening statements would be something that should be freely

16  available.  That -- that's not privileged.

17          Reports on this account to the State of Nevada, State

18  Bar of Nevada, Supreme Court with respect to this account being a

19  Nevada IOLTA account would certainly not be privileged.

20          One of the arguments advanced in opposition to the

21  motion to dismiss by my colleagues are that, hey, look, this is

22  equivalent of a New York IOLTA account, which is a significant

23  argument that they make.  And therefore, we've asked, Do you,

24  Chase, with respect to this account, have any recording with

25  regard to this account to the State of New York?

TRANSCRIBED FROM DIGITAL RECORDING
2:22-cv-01988-APG-BNW - Thursday, April 6, 2023      9

1          I will tell you that the State of New York indicates
2   there's none.  And that's the reason they've denied any claim by
3   Mr. Duffy with respect to the New York clients' security fund
4   because there's no trust account properly -- or properly set up
5   for this account out of state to New York, which precludes Duffy
6   from making his claim.

7          So I do -- I do not agree that at least that scope of
8   discovery would be so difficult to provide.  Those are either
9   things they did or did not do.  I think they may have done
10  something with respect to Nevada, but I don't believe they did
11  anything with respect to New York.

12         Moreover, the question of the 14 years of account
13  history, I'll tell you what our interest is.  Our interest is,
14  did Chase receive other objections by victims with respect to the
15  processing of that account?  In other words, did they receive
16  warnings?  Were they on notice, red flagged, that this
17  account -- was there someone like Ms. Choy (phonetic) or somebody
18  else who's reported, Hey, Chase, these guys took my money
19  improperly.  I -- you should not allow this to happen?

20         That should have caused some red flags to go up in
21  Chase's account.  So I don't need all of the -- I can -- at this
22  stage, we could agree to limit that aspect to any, shall we say,
23  other complaints about the management of the account by persons
24  who deposited money to the account.  That would be one way of
25  narrowing the scope of the discovery.

1              With respect to --

2         **THE COURT:**  I'm sorry.  Your suggestion is to narrow

3    it how, specifically, so that I can go back to the defense and

4    ask them?

5         **MR. CATANZARITE:**  Sure.  We would simply ask with

6    respect to the history at this point, were there any other

7    persons who deposited money to that Markowitz account who then

8    complained to Chase about the account?  So we would -- we would

9    agree at this first pass to limit it to that.

10        **THE COURT:**  And this is, what, 14 years?

11        **MR. CATANZARITE:**  14 years, yes.  And we'll see.

12   Maybe there's only two or three, if there's any, that would be

13   significant to us.

14              Next, policies and procedures.  I -- I can appreciate

15   the defense is concerned about policies and procedures.  But I

16   question, do the policies and procedures set forth a set of

17   requirements where Chase is supposed to confirm when they're

18   opening a Nevada IOLTA account that the lawyer's licensed in

19   Nevada?  If not, what's the next step?

20              Do they have a trigger or, shall we say, a policy and

21   procedure that there could be lawyers from Nevada opening

22   out-of-state trust accounts?  If so, were they then obligated

23   under their internal policies and procedures to contact the state

24   to see if an out-of-state account could be maintained?

25              Had they done that here, then Duffy would have a

TRANSCRIBED FROM DIGITAL RECORDING
2:22-cv-01988-APG-BNW - Thursday, April 6, 2023     11

1  claim against the New York IOLTA fund, but he doesn't because the

2  account wasn't set up that way.

3          Did there -- did they violate their own internal

4  policies and procedures that would have protected those within a

5  class of persons to whom there could be an anticipated, shall we

6  say, duty or relationship where these -- where persons were

7  induced to put money into this account and then defrauded again,

8  but the proper New York account was never set up?

9          Those are -- I think we could limit.  I'd be happy to

10 limit this initial wave of discovery.

11         We already have an expert on board on this, and

12 that's been their suggestion of what they'd like to see.  I don't

13 think I need to see all the ins and outs of the account.  I do

14 agree with Mr. Tasca that our Request No. 2 was brought in that

15 regard.  But frankly, we did not anticipate, at the time we wrote

16 the discovery, that there was 14 years of this account

17 relationship.

18         So -- and we would be interested in that right

19 now --

20         **THE COURT:**  So that I'm clear, you're suggesting to

21 narrow the history of the account of 14 years to any individuals

22 who had deposited money and who have subsequently complained,

23 correct?

24         **MR. CATANZARITE:**  Yes.

25         **THE COURT:**  And with regard to the policies and

1  procedures, how, specifically, are you willing to narrow this?

2  Policies and procedures regarding what?

3      **MR. CATANZARITE:**  Okay.  I'd like to see their

4  policies and procedures -- first of all, I'd like to see

5  the -- if I can see, the table of contents, because I find in

6  litigation that a table of contents may describe something

7  differently than what I thought it -- how I think it might be

8  defined.

9      But what we're looking for is what policies and

10 procedures are there for determining the -- the attorney opening

11 the trust account is a Nevada barred attorney, and if not a

12 Nevada barred attorney presenting in Nevada, what, if they -- do

13 they then have to inquire where are you barred?  And if barred,

14 then in New York, Chase -- the nature of the bank as broad a bank

15 as it is, does it have New York-related policies and procedures

16 that would then have to have been followed to open the New York

17 compliant trust account?

18     **THE COURT:**  And with regards to the attorney-client

19 privilege, you're suggesting that there is no attorney-client

20 privilege you would be claiming?

21     **MR. CATANZARITE:**  Well, we have an attorney -- we

22 have a privilege -- attorney-client privilege that they would be

23 claiming.  I -- I don't see that we need to get into that, unless

24 the Court views the complaints by the persons who deposited money

25 into the trust account as being attorney-client privilege, in

1  which case, we'd be agreeable that they can redact that at this

2  point.  We're simply looking at what notice was given, redact the

3  name of the complaining party.

4          **THE COURT:**  All right.  Mr. Tasca.

5          **MR. TASCA:**  Thank you, Your Honor.

6          So, you know, what I heard being articulated is -- is

7  really only going to be a first step, I'm sure.  I'm sure they're

8  going to ask for what -- what they just said, and then they're

9  going to want to go deeper.  And then they're going to want to

10  take depositions.  We're going to need a protective order --

11          **THE COURT:**  Well, I guess, my question is this:  I

12  mean, what if I were to enter an order where I only allow the

13  plaintiffs to go after this discovery that's been described

14  today?  How would you feel about that?

15          **MR. TASCA:**  Well, Your Honor, we'd obviously prefer

16  you grant our motion in its entirety.  (Indiscernible).  I mean,

17  that would be better than -- better than nothing.

18          We would ask that, you know, if we have to provide

19  that, that maybe at this point, there be no depositions, at

20  least, taken or -- or further discovery requests, at least until

21  the motion to dismiss is decided.  But this would give the

22  plaintiffs (indiscernible) something they can sink their teeth

23  into and keep going on it.  I -- yeah.  I mean, that -- that is

24  not an unreasonable compromise.

25          **THE COURT:**  All right.  So, I mean, I would be

 1  willing to, sort of, split the baby here.  I mean, so long as the

 2  plaintiffs would be in agreement not to go after any other

 3  discovery, other than what we've described here today, so there

 4  will be no deposition at this stage of the game or any other

 5  discovery other than what's been discussed until the motion to

 6  dismiss has been decided.

 7            So I'll hear from you, sir.

 8            **MR. CATANZARITE:**  We'd agree to that, Your Honor.

 9  I -- I think that's a reasonable compromise at this stage.

10            **THE COURT:**  All right.  So, I guess, then, I mean,

11  the posture of this motion is as a motion to stay discovery.  So

12  I suppose I'll go ahead and give you my order denying the motion

13  to stay discovery, but I will go ahead and enter a protective

14  order allowing the parties only to enter into the specific

15  discovery that we went ahead and talked about today.

16            So would it make more sense for the parties to go

17  ahead and draft something for my approval jointly?

18            **MR. TASCA:**  I was going to suggest that, Your Honor,

19  just so we're, you know, all on the same page as to what,

20  exactly, they want and what we're (indiscernible).  And so, I

21  think we can work with plaintiff's counsel or agreeable to do

22  that (indiscernible).

23            **THE COURT:**  All right.  So let me go ahead and read

24  you my order, then.

25            I'll deny the motion to stay discovery, but again,

TRANSCRIBED FROM DIGITAL RECORDING
2:22-cv-01988-APG-BNW - Thursday, April 6, 2023     15

 1  the reason why I'm denying the motion to stay discovery is

 2  because of this agreement that the parties have reached in court

 3  today to limit the discovery in the ways that were discussed in

 4  court today.

 5          All right.  So the parties are familiar with the

 6  facts of this case and the related arbitration.  Accordingly, the

 7  Court will only repeat them here as necessary.

 8          Defendants move to stay discovery as it recently

 9  filed a motion to dismiss plaintiff's amended complaint.

10  Defendant's motion to dismiss seeks to dismiss all of plaintiff's

11  claims under Rule 12(b)(6) for failure to state a claim.

12          Defendant argues that discovery should be stayed and

13  under the preliminary peek test because -- because its motion to

14  dismiss will be dispositive and no additional discovery is needed

15  to decide it.

16          Defendant also argues that discovery should be stayed

17  under the good cause test as discovery is already proving to be

18  unduly burdensome and will likely continue in this matter.

19          Plaintiff disagrees, arguing that discovery should

20  not be stayed.  Plaintiff argues that defendant has not met its

21  heavy burden under the preliminary peek test to convince this

22  Court that plaintiff will be unable to proceed on any claim.

23          Plaintiff also argues that good cause does not exist

24  to stay discovery as the case is not complex and discovery will

25  not be overly burdensome.

TRANSCRIBED FROM DIGITAL RECORDING
2:22-cv-01988-APG-BNW - Thursday, April 6, 2023      16

1          Finally, plaintiff argues that he will be prejudiced

2    if discovery is stayed because he is over 80 years old.

3          The federal rules do not provide for an automatic

4    stay or blanket stays of discovery because of potentially

5    dispositive motions.  However, courts may stay discovery in

6    certain circumstances.

7          As mentioned before, there are two main tasks.  One

8    is the preliminary peek test under *Kor Media*.  The other one is

9    the good cause test as explained in *Schrader v. Wynn*.

10         Here, defendant argues that discovery should be

11   stayed under both tests and plaintiff disagrees.  The Court here

12   agrees with plaintiff that a discovery stay is not appropriate in

13   this case under either test given what we discussed here today.

14         Under the preliminary peek test, a discovery stay is

15   not appropriate.  The Court is not convinced that defendant will

16   succeed on its motion to dismiss on all claims.  That does not

17   mean that you won't succeed.  I'm just not convinced at this

18   stage.  I have written at length about how difficult it is for a

19   court in my situation to be able to be convinced of anything

20   based on a preliminary peek.

21         However, I will not go in any depth regarding the

22   motion to dismiss as it's the court's -- the district court's

23   rule to evaluate the propriety of the motion to dismiss.

24         Accordingly, the Court will not stay discovery under

25   the preliminary peek test, and under the good cause test, I find

TRANSCRIBED FROM DIGITAL RECORDING
2:22-cv-01988-APG-BNW - Thursday, April 6, 2023    17

 1  that even though defendant argues that discovery is proving to be

 2  unduly, unduly burdensome, based on the broad discovery requests

 3  and it could potentially complicate facts and expert

 4  required -- discovery, I find that the middle ground that we were

 5  able to strike today takes care of the concerns that the defense

 6  may have, and the defense seems to also agree that that is a good

 7  compromise.

 8          The Court is unpersuaded by the arguments made in the

 9  defense -- by the defense and, as a result, finds that no good

10  cause has been shown.

11          So I will go ahead and allow you to prepare a joint

12  protective order that delineates in detail the discovery that we

13  discussed in court today.  And I'm going to ask you to make sure

14  that we get that no later than next Friday.

15          So what is today?  Is today the 7th?

16          **COURTROOM ADMINISTRATOR:**  Today's the 6th, Your

17  Honor, and the date for next Friday, Your Honor, would be April

18  the 14th.

19          **THE COURT:**  All right.  Does that work for

20  plaintiffs?

21          **MR. CATANZARITE:**  It does, Your Honor.

22          **THE COURT:**  Defense.

23          **MR. TASCA:**  It works for us, as well, Your Honor.  I

24  guess I would just ask while we're all here, if plaintiff's

25  counsel could send us, sort of, you know, a list of what they

1  described today, and we could take a look at it.  That could be a

2  good way to start.

3          **THE COURT:**  All right.  Sounds wonderful.  So I'll be

4  looking for the joint protective order by Friday, the 14th.  If

5  you need additional time to put that together, just let me know,

6  and I'm happy to grant additional time.  Okay?

7          **MR. CATANZARITE:**  Thank you, Your Honor.

8          **THE COURT:**  All right --

9          **MR. TASCA:**  Thank you, Your Honor.

10         **THE COURT:**  -- wonderful.  Have a good weekend,

11  everyone.

12         **MR. TASCA:**  You, too.

13         **MS. COLES:**  Thank you, Your Honor.

14              (*Proceedings adjourned at 1:45 p.m.*)

15                    --o0o--

16      I, Paige M. Christian, a court-appointed transcriber,

17  certify that the foregoing is a correct transcript transcribed

18  from the official electronic sound recording of the proceedings

19  in the above-entitled matter.

20

21  Date:  April 13, 2023

22                    /s/ Paige M. Christian_____

23                    Paige M. Christian, RPR, CRR, CCR #955
                      Official Court Reporter
24                    United States District Court
                      District of Nevada
25